. THE PEOPLE OF THE STATE OF NEW YORK ex rel. WELLS &
   NEWTON COMPANY OF NEW YORK, Respondent, *v.*
   CHARLES L. CRAIG, as Comptroller of the City of New York,
   and Others, Appellants.

First Department, July 1, 1921.

**Mandamus — writ issues only where clear legal right appears —
failure to present claim to comptroller as required by Greater
New York Charter, § 261, bar to application for writ — failure of
relator to establish clear, legal right to writ — failure to have
amount of claim audited — audit of claim by comptroller under
Greater New York Charter, § 149.**

A writ of mandamus issues only in that class of cases where a clear legal
right is made to appear and there is no other adequate and legal means
of obtaining it.

The failure to comply with section 261 of the Greater New York charter,
providing in effect that no action or special proceeding shall be main-
tained against the city of New York unless it shall appear that at least
thirty days have elapsed since the claim was presented to the comptroller
and that he has neglected or refused to make an adjustment or payment
thereof for thirty days after such adjustment, is a bar to an application
by a contractor with the board of education of the city of New York,
for a peremptory writ of mandamus requiring the comptroller of the
city of New York to execute a warrant for a balance alleged to be due
the relator.

The relator failed to establish a clear legal right to the writ demanded
for the reason that the amount of the claim asserted by it has never been
fixed, determined and audited by any competent public authority. This
appears from the fact that the auditor of the board of education in his
report to the board did not approve all the claim at a fixed sum, that
the board of education and the board of estimate and apportionment
expressly left open the question of how much was actually due and that
the board of aldermen in approving and concurring in the resolution of
the board of estimate and apportionment also left open the question of
the amount due to the relator.

The amount to which the relator is entitled still remains to be determined
by the proper auditing officer who, under the circumstances, is the comp-
troller of the city of New York under the provisions of section 149 of the
Greater New York charter.

The fact that the comptroller voted in the affirmative on the resolution of
the board of estimate and apportionment does not estop him in any
way from asserting his right to audit the relator's claim, for the reason
that the resolution for which he voted did not fix the amount of said
claim nor audit the same.

First Department, July, 1921.          [Vol. 197

Appeal by the defendants, Charles L. Craig and others, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 11th day of March, 1921, granting relator's motion for a peremptory writ of mandamus.

*Willard S. Allen* of counsel [*John F. O'Brien, Arthur J. W. Hilly, Samuel J. Resnick* and *Harold Taylor* with him on the brief; *John P. O'Brien, Corporation Counsel*], for the appellants.

*Thomas F. Conway* of counsel [*Joseph A. Kellogg* and *Thomas E. O'Brien* with him on the brief; *J. Power Donellan,* attorney], for the respondent.

Dowling, J.:

The facts upon which this proceeding is based are undisputed. On October 25, 1915, the relator entered into a contract with the board of education through its building committee, for the installation of the heating and ventilating apparatus in the Evander Childs High School, in the borough of The Bronx. The contract provided that the work of installation of the heating and ventilating apparatus should be completed within 120 days for the total sum of $74,770, but because of various faults and defaults of the city contractors, by reason of which the city failed to have the construction of the building in which the said heating and ventilating apparatus were, by the terms of the said contract to be installed, ready for the installation of such apparatus in either a practicable or economical manner, and because of the interference with the orderly progress of the said relator's work covered by said contract, the said relator suffered great and continuing and increasing damages in progressing the said work, until June, 1918, or prior thereto, when the damages had become so great and defaults of said city so serious that the contractor quit work thereunder and refused to be further bound by the provisions of said contract and refused to go on with the work covered thereby unless and until the city should enter into a binding agreement with the said contractor to pay it its claim then and theretofore asserted for extra expenses incidental to the carrying out of

the said contract in the previous prosecution of the work thereunder and in completion of the further work covered thereby. At this time the relator had completed about two-thirds of the contract and performed work of the value of $50,823, which sum had been paid to it. On July 3, 1918, a letter was written by the vice-president of the board of education to relator's attorney relative to the adjustment of relator's contract, in which he declined to recommend a form of supplementary ·agreement submitted by the attorney, for the reason that " the Board of Education is so placed that any agreed state of facts translated into terms of money might vitiate or impair the Board's future action in connection with the recovery of its losses from the sureties of defaulting construction contractors. However, I may say that no matter how · tenacious the Board of Education may be in the full protection of its rights, no disposition exists on our part to treat the situation other than with a spirit of fairness towards your clients. There appears to be no question raised as to the solvency of your clients or of the Board of Education, therefore we may consider that both parties are responsible for their acts and future agreements." He thereupon proceeded to give ʿthe outlines of the resolution thereinafter set forth, and this proposal was accepted by the relator which wrote that it " will resume the work to be completed under the contract, leaving the settlement of its claims for breach of contract or other claims to be settled in the manner or methods set forth above." Thereupon the board of education at its meeting on July 3, 1918, adopted the following resolution:

" WHEREAS, on October 25, 1915, the Board of Education entered into a contract with Wells & Newton Co. for the installation of heating and ventilating apparatus at the Evander Childs High School, the amount of said contract was $74,770, upon which there has been earned and paid the sum of $50,823, leaving a balance of work in a state of performance or being performed, amounting to $23,947, and

" WHEREAS, the completion of the work required under the aforesaid contract has been delayed by reason of the failure of the original construction contractor to perform the work required under his contract, the original construction contractor has been declared in default and his contract void

**410** People ex rel. Wells & Newton Co. *v.* Craig.

First Department, July, 1921. [Vol. 197

in the interests of the Board. The completion of the construction work has been relet on three occasions owing to default in the case of two, and

" Whereas, the interests of the Board of Education demand that the work of construction and completion of the Evander Childs High School be carried forward without further delay, therefore be it

" *Resolved,* that the work called for in the above mentioned contraction with the Wells & Newton Co. of New York be continued under the terms of the present contract until completion, and

" *Resolved,* that the Board of Education acknowledges that by reason of such continuation of the performance of the contract, the contractors will have a claim for extra expense, the amount of which is not definable at this time, the said extra expense arising out of delays on the part of other contractors and the enhanced prices of labor and materials due to present day extraordinary conditions; and

" *Resolved,* that the Board of Education, upon the completion of the work required to be performed under the existing contract, will entertain a claim in detail and settle the same by either one of the following methods:

" 1. By agreement,

" 2. By arbitration, or

" 3. By judicial decision on an agreed state of facts, and

" *Resolved,* that the work called for under the contract be proceeded with without delay under the direction of the Superintendent of School Buildings."

Thereupon the relator resumed work, and diligently prosecuted the same to completion and the same was fully completed in or about the month of May, 1920. Because of said faults and defaults of the said city and board it was impossible to sooner complete the same. It was in reliance on said resolution and because thereof, and solely because thereof, that the relator resumed and completed said work.

Upon completion of the work the contractor submitted a claim showing the reasonable value of the work as done as $136,913.93, being the actual cost plus ten per cent profit. Supporting affidavits and schedules were filed with the board of education, which requested from relator and received

directly from trade and contractors' associations further affidavits and statements in support of the claim.

On July 12, 1920, the board of education issued its certificate· as follows:

" On behalf of the Board of Education, School District of the City of New York, it is hereby certified that the contract of Wells & Newton Co. of N. Y. For Item 1, Installing Heating and Ventilating Apparatus Work on Public School Evander Childs H. S. situated at East 184 Street and Creston Avenue Borough of The Bronx dated the 25 day of October 1915 has been fully performed and the work finished, complete and perfect in every respect and to the satisfaction of said Board, and accepted July 12, 1920.

" It is further certified that having given due consideration to the time limit of the contract an allowance of 1128 days is made for delays beyond the control of the contractor, as provided in clause J of the contract; also that the last payment under said contract is now due, and that all damages and allowances which should be paid or made by the contractor have been deducted from the said payment, leaving the sum of Nine thousand and ninety seven $......Dollars due thereon.

" Dated, NEW YORK, *July* 12, 1920.

" BOARD OF EDUCATION

" School District of City of New York

By JOHN A. FERGUSON, *Chm.*

" Acting Chairman, Committee on

" Buildings & Sites."

Subjoined to this certificate and a part thereof is a certificate by the relator as follows:

" *Certificate of Relator that there is no claim or demand for extra work or otherwise made with Board of Education.*

" We do hereby certify that there is no claim or demand for extra work or otherwise, under or in connection with the contract of Wells & Newton Co., of N. Y., made with the Board of Education, School District of the City of New York, for Item 1, Installing Heating & Ventilating Apparatus on Public School Evander Childs HS situated at East 184 Street and Creston Avenue Borough of The Bronx dated the 25th

First Department, July, 1921. [Vol. 197

day of October 1915. We do further certify that the last payment under said contract, to wit, the sum of Nine thousand and ninety seven......dollars will be in full of every claim or demand whatever in the premises, except as per our bills and schedules rendered for work done and materials furnished in conformity with Resolution of the Board of Education, dated July 3, 1918.

"WELLS & NEWTON CO. OF N. Y.,

" *Contractor.*

" By F. J. Fee, *Pres.*"

To this in turn was subjoined the certificate of the auditor of the board of education that " the above certificate is in conformity with the by-laws, rules and regulations of the Board of Education, School District of The City of New York."

These certificates were duly filed in the office of the comptroller of the city of New York on or about July 13, 1920, and thereafter the comptroller delivered to the relator a warrant for the sum of $9,097 as a further payment in addition to payments theretofore made on account of the work of said relator covered by said contract for the installation of the heating and ventilating apparatus in said high school, the aggregate payments made on said account, including said last payment, being $74,770.

On July 22, 1920, the auditor of the board of education, after having received this claim and the schedules of cost, supported by affidavits of expert accountants, transmitted the entire facts, figures and claim in a report to the president of the board of education and chairman of the committee on salaries, finance and supplies.

The auditor's report, among other things, contains the following:

" This Bureau is without any evidence which we can use to offset or deny the claim, nor does it appear that it was the original intention of the Board of Education to do other than meet the situation in a fair and reasonable way.

" I would suggest that the settlement of this claim is a matter for your determination, either by an allowance in full or by some method of compromise, which might be agreed upon and acceptable to all parties concerned.

" Whatever may be the sum of settlement or allowance or agreement your Committee sees fit to make, I think it will be necessary to submit to the Board of Estimate and Apportionment a special estimate under the provisions of Subdivision 8 of Section 877 of the Education Law."

In conformity with the suggestion contained in this report of its auditor, the board of education on July 30, 1920, passed the following resolution:

" *Resolved,* that, in pursuance of the provisions of Section 877, subdivision 8, of the State Education Law, the Board of Estimate and Apportionment be, and it is hereby, requested to appropriate the sum of $62,143.93, such appropriation or so much thereof as may be required to be used for the purpose of making payment to the Wells & Newton Company of New York of the amount found to be due and resulting from work performed at the Evander Childs High School, Borough of the Bronx, in accordance with the terms and stipulations contained in preambles and resolutions adopted by the Board of Education on July 3, 1918, the said preambles and resolutions continuing in performance a contract for the work of installing heating and ventilating apparatus at the above named school building, entered into between the Wells and Newton Company of New York, and the Board of Education on October 25, 1915."

The secretary of the board of education transmitted a copy of this resolution to the board of estimate and apportionment on July 31, 1920, together with a copy of the report of its auditor before referred to, and the board of estimate and apportionment on August 6, 1920, passed the following resolution:

" WHEREAS, the Board of Education in a communication dated July 31, 1920, made requisition upon the Board of Estimate and Apportionment for an appropriation, under the provisions of section 877, subdivision 8, of the State Education Law, of sixty-two thousand one hundred and forty-three dollars and ninety-three cents ($62,143.93), such appropriation, or so much thereof as may be required, to be used for the purpose of making payment to the Wells & Newton Company of New York of the amount found to be due and resulting from work at the Evander Childs High School, Borough of the Bronx, in performance of a contract

414   People ex rel. Wells & Newton Co. v. Craig.

First Department, July, 1921.                    [Vol. 197

for the work of installing heating and ventilating apparatus at said named school building; therefore, be it

" *Resolved,* that the Board of Estimate and Apportionment, pursuant to the provisions of subdivision 8 of section 877 of the State Education Law, as amended by chapter 786, Laws of 1917, and predicated upon the requisition of the Board of Education dated July 31, 1920, hereinabove referred to, does hereby appropriate, subject to the approval of the Board of Aldermen, the sum of sixty-two thousand one hundred and forty-three dollars and ninety-three cents ($62,143.93), and when the approval of the Board of Aldermen shall have been obtained therefor the Comptroller be and he hereby is authorized to issue special revenue bonds in an amount not exceeding sixty-two thousand one hundred and forty-three dollars and ninety-three cents ($62,143.93); said special revenue bonds to be issued in accordance with the provisions of section 187 of the Greater New York Charter* and the proceeds to the amount of the par value or as much thereof as shall be required, to be used to pay whatever claim may be found in favor of the Wells & Newton Company under the provisions of law relating to the audit and payment of salaries and other claims by the Department of Finance; and such amount as may thus be paid, not exceeding the amount herein authorized, shall be included as a separate item in the annual estimate of the Board of Education for the year 1921 in accordance with the requirements of section 877, subsection B, of the State Education Law as amended.† "

All the votes at the meeting (16) were cast in favor of this resolution, including the mayor and comptroller. A certified copy of the resolution was sent to the board of aldermen on August 12, 1920, and the board of aldermen on August 17, 1920, adopted a resolution as follows: " *Resolved,* that the Board of Aldermen hereby approves of and concurs in the following resolution adopted by the Board of Estimate and Apportionment at a stated meeting held August 6, 1920," which resolution then incorporated therein *in hæc verba* the above-quoted

---

* See Laws of 1901, chap. 466, § 187, as amd. by Laws of 1910, chap. 683.— [Rep.

† See Education Law, § 877, subd. 1, ¶ b, as added by Laws of 1917, chap. 786.— [Rep.

resolution theretofore adopted by the board of estimate and apportionment.

The resolutions of the board of estimate and the board of aldermen were duly approved by the mayor on August 19, 1920. On August 24, 1920, a payment voucher and final certificate were filed in the comptroller's office which showed the sum of $62,143.93 due the relator, referred to the above-mentioned resolutions of the board of education and of the board of estimate and apportionment and of the board of aldermen and the approval of the mayor, and had attached thereto the relator's statement of cost and various supporting affidavits, schedules and letters. It also contained a certificate of the examiner of the board of education to the effect that the prices were reasonable and just and that the calculations and extensions were correct, and a certificate of the auditor of the board of education and its chief clerk, certifying to the examination and audit of the bill of the relator in the amount of $62,143.93 and that the bill " is chargeable to the funds of the Board of Education * * * and it is further certified that the annexed bill is in conformity with the State Education Law and the by-laws and regulations of the Board of Education."

This proof of full performance, completion and acceptance, and the final certificate and payment voucher, showing the same, were duly filed in the office of the comptroller on or prior to August 24, 1920.

The comptroller and the mayor refused thereafter, although frequent demand was made upon them, to deliver a duly executed warrant to the relator for the said $62,143.93 or any part thereof, but refused to assign any grounds or reason for withholding said payment and the relator has never been paid any portion thereof, although the heating and ventilating apparatus installed by it are and for many months last past have been in use by the city of New York and the board of education for school purposes, such use having begun prior to August 24, 1920.

The answering affidavit of the comptroller of the city of New York does not dispute any of the facts set forth in the moving affidavit. It sets forth in full the provisions of section J of the original contract between the relator and the board

of education, also that no claim had been presented to the comptroller by the relator as required by section 261 of the Greater New York charter; that no new contract had been made between the parties which complied with the provisions of section 419 of the charter; that if this was not a new contract, then it was an attempt to pay the relator a sum in excess of the contract price for its work and was violative of article 3, section 28, of the Constitution of the State of New York; and finally that if relator has a valid claim, enforcible despite the provisions of section J of the contract, such claim cannot be adjusted by the board of education, but must be presented for allowance and audit to the comptroller, in accordance with the provisions of section 149 of the Greater New York charter, and if such claim be not allowed, the relator must then, if it desires to press the claim, proceed against the city in an action at law. The comptroller's affidavit concludes by saying: " By reason of the matters heretofore set forth in its affidavit, your deponent, as the Comptroller of The City of New York, has refused to pay the vouchers transmitted to him, as such Comptroller, by the Board of Education, because said vouchers cannot be legally allowed and paid by your deponent unless and until a claim be presented and examined into and allowed by your deponent in the manner set forth and provided under sections 149 and 261 of the Greater New York Charter."

The order appealed from directed the issuance of a peremptory writ of mandamus requiring the comptroller of the city of New York to execute a warrant of the city of New York for the sum of $62,143.93, with interest thereon at six per cent from September 23, 1920, to date of delivery of said warrant, and upon countersignature of said warrant by the mayor of the city of New York, to deliver the same to the relator, and also requiring the mayor of the city of New York to countersign said warrant before delivery thereof by the said comptroller to the relator, in payment of the balance of relator's claim against the city of New York for the installation by it of the heating and ventilating apparatus in Evander Childs High School in the borough of The Bronx.

The general rule is well settled that the writ of mandamus issues only in that class of cases where a clear legal right is

made to appear and there is no other adequate and legal means of obtaining it. (*People ex rel. McMackin* v. *Board of Police,* 107 N. Y. 235; *People ex rel. McCabe* v. *Matthies,* 179 id. 242.) The relator contends that it has brought itself within this rule and that its right to payment by the city of the amount for which the warrant was directed to be executed, namely, $62,143.93, with interest, is clear. It contends that, the amount in question having already been found due as the result of an audit by the board of education, which fixed the amount of the claim, and such fixation having been ratified by the action of the board of estimate and apportionment and the board of aldermen, no further audit is required, nor has the comptroller any power to settle and adjust the claim of the relator.

At the outset the objection is raised that this proceeding cannot be maintained because the provisions of section 261 of the Greater New York charter (Laws of 1901, chap. 466, as amd. by Laws of 1912, chap. 452) have not been complied with. That section reads as follows:

" § 261. No action or special proceeding, for any cause whatever, shall be prosecuted or maintained against the city of New York, unless it shall appear by and as an allegation in the complaint or necessary moving papers that at least thirty days have elapsed since the demand, claim or claims upon which such action or special proceeding is founded were presented to the comptroller of said city for adjustment, and that he has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment; * * *."

Concededly, no such claim ever has been presented by the relator in compliance with this section. The relator contends that this does not apply to a mandamus proceeding against officials of the city but only in an action or special proceeding against the city itself, and that as no relief against the city is prayed for and none is granted under the order from which the present appeal is taken, that section is inapplicable. Further, that the very purpose of resorting to mandamus was to avoid the delay of filing the claim and waiting for action thereon by the comptroller. But that,

418   People ex rel. Wells & Newton Co. *v.* Craig.

First Department, July, 1921.          [Vol. 197

in my opinion, does not meet the objection. The city of New York is a party defendant in this proceeding and the effect of the writ of mandamus issued herein against its mayor and comptroller is to require the payment by the city of the amount claimed. It is the city which is the real party in interest herein and the acts of its officials required to be done directly affect it. It is an unexpended balance of the proceeds of revenue bonds authorized to be issued, which balance is still in the city treasury, which is sought to be applied to the payment of the relator's claim and the allegation in the moving affidavit is that unless such balance is applied to the payment of the relator's claim it may be applied by the city to the payment of other obligations owing by it.

The purpose of this section of the charter was a most salutary one, providing the city's chief financial officer with an opportunity of investigating all claims sought to be enforced against the city, giving him a reasonable time for his investigation and thus preventing imposition and fraud.

Nor do I believe that the votes cast by the mayor and comptroller at the meeting of the board of estimate and apportionment at which action was taken upon the requisition of the board of education in any way estop them or the city from urging this section of the charter for the reason, as will be shown later in this opinion, that the amount of relator's claim was not definitely fixed by any action then or theretofore taken.

My conclusion, therefore, is that section 261 of the charter is a bar to the present application.

But there is a further objection to the granting of the writ herein which goes to the very substance of the controversy between the parties. The city contends that the agreement between relator and the board of education relied upon by the former may be claimed to constitute either a new contract between the parties for the completion of the work which the relator had agreed to perform but had abandoned, in which event such contract was illegal and void, *first,* because there was no good or valuable consideration therefor; *second,* because it was not made in accordance with the provisions of section 419 of the Greater New York charter (as amd. by Laws of 1910, chap. 554); *third,* because it was not made in accord-

ance with the provisions of subdivision 8 of section 875 of the Education Law, as added by chapter 786 of the Laws of 1917. If, on the other hand, it is not a new contract but is a modification of the original contract between the parties, then, it is claimed by the city, that this constitutes an attempt to pay the contractor a sum in excess of the contract price as additional compensation for the work which it had agreed to perform and, therefore, is violative of article 3, section 28, of the Constitution of the State of New York. As I view the argument made by the learned counsel for the relator, however, this new agreement is regarded by them as a modification solely of the original contract and not as a new and independent contract between the parties.

The fundamental objection to the relator's right to the writ of mandamus is the fact that it has failed to establish a clear legal right to the writ demanded and this for the reason that the amount of the claim asserted by it has never been fixed, determined and audited by any competent public authority. This appears from the following facts: *First,* The auditor of the board of education in his report to the board, which was the basis for its action, did not approve the fixation of the amount of the claim at $136,913.93, but said:

" This Board is without any evidence which we can use to offset or deny the claim, nor does it appear that it was the original intention of the Board of Education to do other than meet the situation in a fair and reasonable way.

" I would suggest that the settlement of this claim is a matter for your determination, either by an allowance in full or by some method of compromise, which might be agreed upon and acceptable to all parties concerned."

" Whatever may be the sum of settlement or allowance or agreement your Committee sees fit to make, I think it will be necessary to submit to the Board of Estimate and Apportionment a special estimate under the provisions of Subdivision 8 of Section 877 of the Education Law."

It will be seen that this report of the auditor did not approve nor recommend its payment in full.

*Second.* The board of education, upon receipt of this report, passed the resolution requesting the board of estimate and

420   People ex rel. Wells & Newton Co. *v.* Craig.

First Department, July, 1921.                    [Vol. 197

apportionment to appropriate the sum of $62,143.93, " such appropriation *or so much thereof as may be required* to be used for the purpose of making payment to the Wells & Newton Company of New York *of the amount found to be due* and resulting from work performed at the Evander Childs High School, Borough of the Bronx, in accordance with the terms and stipulations contained in preambles and resolutions adopted by the Board of Education on July 3, 1918, the said preambles and resolutions continuing in performance a contract for the work of installing heating and ventilating apparatus at the above named school building, entered into between the Wells and Newton Company of New York and the Board of Education on October 25, 1915."

It will be seen that this resolution of the board of education so far from fixing the amount due to the relator expressly left open the question of how much was actually due, and while it requests the appropriation of a fixed sum it did not request that all of it be paid to the relator, but on the contrary provided that so much thereof as might be required be used for the purpose of making payment of the amount found to be due. This action of the board of education, therefore, far from being an audit of the relator's claim still left the question of the actual amount due open for future fixation in the manner provided by law.

*Third.* The board of estimate and apportionment, when it favorably acted upon the request of the board of education for the issuance of special revenue bonds in the amount of $62,143.93, provided " said special revenue bonds to be issued in accordance with the provisions of section 187 of the Greater New York Charter and the proceeds to the amount of the par value *or as much thereof as shall be required,* to be used to pay whatever claim *may be found* in favor of the Wells & Newton Company under the provisions of law relating to the audit and payment of salaries and other claims by the Department of Finance; and *such amount as may thus be paid,* not exceeding the amount herein authorized, shall be included as a separate item in the annual estimate of the Board of Education for the year 1921 in accordance with the requirements of section 877, subsection B, of the State Education Law as amended."

Thus the board of estimate and apportionment, far from fixing the amount due to relator under its contract, expressly left open the question of the amount to be paid and provided specifically that whatever was found due should first be. determined under the provisions of law relating to the audit and payment of salaries and other claims by the department of finance.

*Fourth.* When the board of aldermen approved and concurred in the resolution of the board of estimate and apportionment, it did so in the exact language of the resolution of the latter board and thus again left open the question of the amount due to the relator to be determined and fixed by the proper public officials.

It thus appears that the relator's claim has never, in fact, been audited, fixed and determined at any amount by any public official or board. The amount to which it is entitled, if any, still remains to be determined by the proper auditing officer who, under the facts hereinbefore set forth, it seems to me is clearly the comptroller of the city of New York under the provisions of section 149 of the Greater New York charter (as amd. by Laws of 1917, chap. 401).

The learned counsel for the relator contends that in the present matter the comptroller is but a ministerial officer charged with the duty of drawing a warrant against the sum appropriated for the specific purpose of making payment to the relator of the amount found to be due; but there never yet has been any amount found to be due to relator and, therefore, this contention is without force.

Nor does the fact that the comptroller voted in the affirmative on the resolution of the board of estimate and apportionment hereinbefore quoted estop him in any way from asserting his right to audit the relator's claim herein for the reason that the resolution for which he voted did not fix the amount of the relator's claim nor audit the same, but on the contrary left the audit thereof to the ordinary legal procedure which would have involved the reference of the claim in due course to him for audit. This action would have given him the right to examine the claim and obtain such information in addition to that tendered by the relator as would have enabled him to determine whether or not the claim was a proper one

and to exercise his power of audit accordingly. The relator has never complied with any of the requirements of law to compel or warrant the audit of its claim by the comptroller.

It follows, therefore, that the relator having failed to establish a clear legal right to the payment in question is not entitled to a writ of mandamus and that the order appealed from should be reversed, with ten dollars costs and disbursements, and the motion for a mandamus denied, with fifty dollars costs.

Clarke, P. J., Smith, Page and Greenbaum, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion denied, with fifty dollars costs.